UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
YICK LEE,

Plaintiff,

-against-

301 W 17 LLC and PK'S DINER LLC,

Defendants.
------------------------------------------------------------x

**Civil Case No: 1:26-cv-5837**

**COMPLAINT**

**JURY TRIAL REQUESTED**

**COMPLAINT**

Plaintiff, Yick Lee ("Plaintiff"), by and through his counsel, Hanski Partners LLC, hereby files this Complaint against 301 W 17 LLC ("Landlord Defendant") and PK's Diner LLC ("Tenant Defendant" and collectively with Landlord Defendant, "Defendants"), and alleges upon information and belief as follows:

**INTRODUCTION**

1. Plaintiff is an individual with a disability who requires a wheelchair for mobility.

2. Defendants own, operate, and lease a place of public accommodation, the restaurant located at 301 West 17 Street, New York, NY 10011 known as Electric Burrito ("Electric Burrito").

3. Due to Defendants' discriminatory actions, Electric Burrito is not readily accessible to and usable by individuals with disabilities that use wheelchairs ("accessible").

4. Electric Burrito is not accessible because Defendants created and maintain Electric Burrito with architectural elements that function as barriers to wheelchair access ("architectural barriers").

5. By creating and maintain architectural barriers at Electric Burrito Defendants denied, and continue to deny, Plaintiff full and equal enjoyment of Electric Burrito's goods, services, facilities, privileges, advantages, and accommodations ("equivalent access") based on disability.

6. During the 2025 and 2026 calendar years, including in October 2025, Plaintiff desired to patronize Electric Burrito as he likes burritos and tacos.

7. However, Plaintiff was denied the opportunity to patronize Electric Burrito as he encountered architectural barriers at the entrance to Electric Burrito.

8. The architectural barriers Plaintiff encountered include a change in level (step) at Electric Burrito's entrance.



Electric Burrito's Stepped Entrance and Storefront

9. Defendants denied Plaintiff equivalent access to Electric Burrito due to the architectural barriers at Electric Burrito Plaintiff personally encountered.

10. Defendants discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations; the New York Human Rights Law ("State HRL"), Article 15 of the New York Executive Law; the New York Civil Rights Law ("CRL"), § 40 *et seq.;* and the New York City Human Rights Law ("City HRL"), Title 8 of the Administrative Code of the City of New York.

11. Plaintiff files this Complaint against Defendants so they will cease discriminating against him in violation of the ADA, State HRL, CRL, and City HRL (collectively, the "Human Rights Laws").

12. Plaintiff seeks equitable, injunctive, and declaratory relief together with attorneys' fees, costs, and expenses pursuant to the Human Rights Laws.

13. Plaintiff also seeks civil penalties from Defendants pursuant to the CRL, and monetary damages from Defendants pursuant to the State HRL and the City HRL.

## JURISDICTION & VENUE

14. This Court is vested with jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and §1343 because this is an action for declaratory and injunctive relief pursuant to the ADA.

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the events giving rise to this action occurred in the State of New York, County of New York; specifically, at the real property and building thereon with the street address of 301 West 17 Street, New York, NY 10011 ("301W17").

16. This Court has supplemental jurisdiction over Plaintiff's State HRL and City HRL claims pursuant to 28 U.S.C. § 1367(a) as they are related to his claims arising under the ADA.

## FACTS COMMON TO ALL CAUSES OF ACTION

***The Parties and the Place***

17. Plaintiff is a resident of the State and City of New York.

18. Plaintiff suffers from a physical condition that renders him unable to walk using his musculoskeletal system, and which restricts Plaintiff's body motion range and movement.

19. Unable to walk on his own, Plaintiff uses a wheelchair to move about.

20. Landlord Defendant, a New York Limited Liability Company, is a private (non-governmental) entity.

21. Landlord Defendant conducts business within the State of New York, including at 301 West 17 Street, New York, NY 10011.

22. Landlord Defendant owns and operates 301W17.

23. Landlord Defendant leases space within 301W17 to Tenant Defendant for use and occupancy as a restaurant.

24. The space Landlord Defendant leases to Tenant Defendant is located on the ground floor of 301W17.

25. Tenant Defendant, a New York Limited Liability Company, is a private (non-governmental) entity.

26. Tenant Defendant conducts business within the State of New York, including at 301 West 17 Street, New York, NY 10011.

27. Tenant Defendant leases space at 301W17 from Landlord Defendant for use and occupancy as a restaurant.

28. Tenant Defendant owns and operates Electric Burrito, a restaurant that specializes in Burritos and tacos, in the space it leases from Landlord Defendant at 301W17.

29. 301W17 is located in Manhattan's Chelsea neighborhood.

***Plaintiff and Electric Burrito***

30. Plaintiff is in Electric Burrito's neighborhood every week as part of his typical life activities.

31. These typical life activities include a standing appointment Plaintiff has three times a week located approximately five minutes wheelchair rolling distance from Electric Burrito.

32. When Plaintiff is in the Electric Burrito's neighborhood he patronizes restaurants, cafes, and other spaces that are accessible to him.

33. Plaintiff patronizes eating and drinking establishments at least 20 times a year.

34. Mexican food, including burritos and tacos, are among the cuisines that Plaintiff enjoys.

***Past Direct Injury***

35. In October 2025 Plaintiff wanted to dine at Electric Burrito as he likes Mexican food.

36. However, When Plaintiff went by Electric Burrito he personally encountered architectural barriers at Electric Burrito.

37. The architectural barriers Plaintiff personally encountered at Electric Burrito included an inaccessible public entrance.

38. Electric Burrito's public entrance was inaccessible to Plaintiff as it is obstructed by a change in level between the exterior sidewalk and interior floor level, with steps provided to traverse the difference between levels, as opposed to an accessible ramp or platform lift.

39. The architectural barriers at the public entrance to Electric Burrito were visible to Plaintiff while he travelled past Electric Burrito.

40. Plaintiff saw the architectural barriers at the public entrance to Electric Burrito while on the public sidewalk near Electric Burrito.

41. Because the changes in level (steps) at the public entrance to Electric Burrito are open and obvious architectural barriers, Plaintiff did not engage in the futile gesture of trying to physically surmount these barriers in his wheelchair. 42 U.S.C. 12188; 28 C.F.R. § 36.501.

42. The architectural barriers at Electric Burrito's public entrance denied Plaintiff the opportunity to enter Electric Burrito.

43. The architectural barriers Plaintiff encountered made Electric Burrito inaccessible to him as a wheelchair user, denying him equivalent access based on disability.

***Past Deterrent Injury***

44. Since Plaintiff wanted to dine at Electric Burrito in October 2025, Plaintiff has been within five minutes wheelchair rolling time from Electric Burrito on more than 100 occasions.

45. Since October 2025, Plaintiff has wanted to dine at Electric Burrito at least twice, including most recently in June, 2026.

46. However, Plaintiff was deterred from patronizing Electric Burrito.

47. Plaintiff was deterred as he was aware that there are steps at Electric Burrito's public entrance which bar him from entering Electric Burrito, as steps at the entrance are impossible for traverse in his wheelchair.

48. Therefore, although Plaintiff desired to dine at Electric Burrito, he did not.

***Ongoing Deterrent Injury***

49. Plaintiff continues to be deterred from patronizing Electric Burrito as he is aware that the architectural barriers at Electric Burrito's public entrance continue to exist.

50. Plaintiff is also deterred because he has learned of additional architectural barriers at Electric Burrito which would deny him equivalent access to Electric Burrito.

51. The additional architectural barriers Plaintiff learned of include dining surfaces at tables and counters greater than 34 inches above the finished floor and without the clear space required for wheelchair users, and bathroom facilities without maneuvering clearances required for wheelchairs at the bathroom door and operable parts outside the maximum reach range for wheelchair users.

52. The additional architectural barriers Plaintiff learned of also deny him equivalent access to Electric Burrito due to disability.

53. The existence of these additional architectural barriers deter Plaintiff from visiting Electric Burrito.

***Plaintiff's Ongoing Desire to Patronize Electric Burrito***

54. Plaintiff continues to desire to dine at Electric Burrito.

55. Electric Burrito is conveniently located approximately five minutes wheelchair rolling distance from an appointment Plaintiff has 3 times every week.

56. When Plaintff is in Electric Burrito's area he patronizes restaurants and other spaces that are accessible to him as a wheelchair user.

57. Plaintiff dines out at restaurants 20 or more times a year.

58. Plaintiff enjoys burritos and tacos, both of which are specialties of Electric Burrito.

59. Plaintiff desires to have Electric Burrito's burritos, tacos, and wishes to sample other items on its menu.

60. Plaintiff desires the opportunity to patronize Electric Burrito but cannot due to the architectural barriers Defendants created and maintain at Electric Burrito.

61. Plaintiff will not engage in the futile gesture of trying to physically enter Electric Burrito as he is aware that architectural barriers which bar him from entering exist at Electric Burrito. 42 U.S.C. 12188; 28 C.F.R. § 36.501.

62. Due to the architectural barriers Defendants maintain at Electric Burrito, Plaintiff continues to be deterred from patronizing Electric Burrito.

***Defendants Caused Plaintiff to Suffer Past Injury, and Cause Plaintiff to Suffer Ongoing Injury***

63. Defendants created and maintain the architectural barriers at Electric Burrito.

64. Defendants denied Plaintiff equivalent access to Electric Burrito through the architectural barriers they created and maintain at Electric Burrito.

65. Defendants caused Plaintiff to suffer a direct injury by creating and maintaining architectural barriers at Electric Burrito that he encountered.

66. Defendants caused Plaintiff to suffer a deterrent injury as they created and maintain architectural barriers at Electric Burrito that deterred him from dining there.

67. Defendants cause Plaintiff to suffer an ongoing injury by as they created and maintain the architectural barriers at Electric Burrito that continue to deter him from patronizing Electric Burrito.

68. Defendants continue to maintain and the architectural barriers at Electric Burrito that deny Plaintiff equivalent access, inclusive of the architectural barriers at the public entrance that deny Plaintiff the opportunity to enter Electric Burrito.

69. Plaintiff is aware that Defendants continue to maintain the architectural barriers in violation of their obligation to provide an accessible place of public accommodation under the Human Rights Laws.

70. By continuing to maintain these architectural barriers at Electric Burrito, Defendants inflict continue to deny Plaintiff equivalent access to Electric Burrito due to disability, discriminating against Plaintiff in violation of the Human Rights Laws.

71. By maintaining these architectural barriers, Defendants cause Plaintiff to suffer an ongoing injury as their maintenance of these architectural barriers continues to deter Plaintiff from visiting Electric Burrito

72. Plaintiff continues to be deterred from dining at Electric Burrito because he is personally aware that the architectural barriers at Electric Burrito deny him the opportunity to have equivalent access to Electric Burrito.

73. But for the architectural barriers Plaintiff would patronize Electric Burrito.

74. After the architectural barriers are removed, Plaintiff will patronize Electric Burrito.

***Alterations were performed to Buildout Electric Burrito at 301W17***

75. 301W17 was constructed prior to January 26, 1993.

76. However, at various times after January 26, 1992, the space Electric Burrito occupies and uses at 301W17 was remodeled, renovated, and reconstructed in a manner that affected or could have affected the way the space, or part of the space, is used (i.e., “Altered”).

77. For example, during the 2024 calendar year Electric Burrito’s space was Altered when physical demolition and construction work was performed to create Electric Burrito.

78. The work included the demolition of the then existing space and the subsequent construction as Electric Burrito.

79. The construction work included (i) interior demolition, (ii) construction of interior partitions (walls) and spaces; (iii) installation of flooring; (iv) changes to the layout of the space; (v) installation of plumbing fixtures; (vi) installation of fixtures, including a sales and service counter, and a counter for drinking and dining; and (vii) the installation of a new storefront.

80. However, Electric Burrito’s space was Altered without providing for the minimum required physical accessibility necessary for disabled individuals that use wheelchairs to have equivalent access to Electric Burrito.

81. Therefore, although Altered, Electric Burrito’s physical space is not accessible.

82. Electric Burrito is a place of public accommodation as defined by the ADA, State HRL, CRL, and City HRL, because it is a restaurant.

83. As a place of public accommodation, Electric Burrito is required to be accessible pursuant to the ADA, State HRL, and City HRL as a non-accessible place of public accommodation does not provide equivalent access to persons such as Plaintiff, a disabled individual that uses a wheelchair.

84. To comply with the ADA, CRL, State HRL, and City HRL, Landlord Defendant, the property owner and lessor of a place of public accommodation, is required to provide Plaintiff, as a disabled individual, equivalent access to Electric Burrito.

85. To comply with the ADA, CRL, State HRL, and City HRL, Tenant Defendant, the lessee and owner/operator of a place of public accommodation, is required to provide Plaintiff, as a disabled individual, equivalent access to Electric Burrito.

86. The ADA, CRL, State HRL, and City HRL prohibits the property owner, lessor, and lessee of a place of public accommodation, as well as the operator and owner of the place of public accommodation (each a "public accommodation"[1]) from discriminating based on disability with respect to the place of public accommodation. ADA, 42 U.S.C. § 12181 and 28 C.F.R. § 36.104; State HRL, Executive Law § 296(2)(a); N.Y. Civil Rights Law §§ 40 and 40-c, and the City HRL, Administrative Code § 8-102.

87. Each Defendant is a public accommodation: Landlord Defendant is a public accommodation as it owns and leases the physical space within 301W17 in which Electric Burrito is located; Tenant Defendant is a public accommodation as it owns and operates Electric Burrito and leases the space in which Electric Burrito is located from Landlord Defendant.

[1] Also known as a "covered entity" under the City Human Rights Law.

88. The ADA, State HRL, and City HRL impose joint and several liability on the owner, lessor, and lessee of the location in which a place of public accommodation is located, as well as upon the operator and owner of the place of public accommodation.

89. Each Defendant is vicariously liable for the discriminatory acts and omissions of their employees and agents.

90. Pursuant to the Human Rights Laws, Electric Burrito, an Altered place of public accommodation is required to be readily accessible to and usable by disabled individuals that use wheelchairs.

91. Defendants' failure to comply with the ADA, State HRL, and City HRL infringes upon Plaintiff's rights to be free from discrimination based on disability.

92. Defendants offer ambulatory individuals the opportunity to dine within Electric Burrito but deny Plaintiff this opportunity based on disability.

93. By denying Plaintiff the opportunity to enter Electric Burrito's interior through their maintenance of architectural barriers, Defendants unlawfully discriminate against Plaintiff based on disability.

94. To the extent Defendants assert that they do not deny Plaintiff the opportunity to enter Electric Burrito as they can assist Plaintiff in overcoming the architectural barriers so he may enter Electric Burrito, Defendants' demand that Plaintiff seek assistance to enter Electric Burrito, instead of providing independent access to him as a wheelchair user, is unlawful discrimination in violation of the Human Rights Laws.

95. Defendants provide ambulatory individuals the opportunity to independently enter Electric Burrito but deny Plaintiff this opportunity based on disability.

96. Any demand by Defendants that Plaintiff request assistance to enter Electric Burrito instead of providing a means of independent access to Electric Burrito is unlawful discrimination against Plaintiff based on disability.

97. Plaintiff intends to visit Electric Burrito and dine there again after the architectural barriers are removed and Electric Burrito is made readily accessible and usable as required by the ADA, State HRL, and City HRL.

98. Architectural barriers which Plaintiff encountered include, but are not limited to, the following violations of the ADA Standards[2] and the NYC Standards[3] (together the "Accessibility Standards"):

*Exterior Route & Public Entrance*

I. An accessible route is not provided from the public street and sidewalk to Electric Burrito's public entrance.
*Defendants fail to provide that at least one accessible route shall be provided within the site from public streets and sidewalks to the accessible building or facility entrance they serve. See 1991 ADA § 4.1.2(1); 2010 ADA § 206.2.1; 1968 BC§ 27-292.5(b); 2008 BC § 1104.1; 2014 BC § 1104.1; and 2022 BC § 1104.1.*

II. The public entrance for Electric Burrito is not accessible.
*Defendants fail to provide that at least 50% of all its public entrances are accessible.*

---

[2] "ADA Standards" means to (i) the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36 Appendix A (the "1991 ADA Standards" or "1991 ADA"); and (ii) the 2010 Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (the "2010 ADA Standards" or "2010 ADA").

[3] NYC Standards" means (i) the accessibility provisions of the 1968 New York City Building Code, N.Y.C. Admin. Code § 27-292.1 *et seq*. (the "1968 BC"), inclusive of the technical standard for accessibility referenced in the 1968 BC, ANSI A117.1-1986 as modified by 1968 BC Reference Standard RS 4-6 (the "1968 Ref Std"); (ii) the accessibility provisions of the 2008 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2008 BC"), inclusive of the technical standard for accessibility referenced in the 2008 BC, ICC A117.1-2003 (the "2008 Ref Std"); (iii) the accessibility provisions of the 2014 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2014 BC"), inclusive of the technical standard for accessibility referenced in the 2014 BC, ICC A117.1-2009 (the "2014/2022 Ref Std); and (iv) the accessibility provisions of the 2022 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2022 BC"), inclusive of the technical standard for accessibility referenced in the 2022 BC, 2014/2022 Ref Std.

*See 1991 ADA § 4.1.3(8)(a)(i).*
*Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 ADA § 206.4.1.*
*Defendants fail to provide that primary entrances are accessible. See 1968 BC § 27-292.5(a).*
*Defendants fail to provide that all of its public entrances are accessible. See 2008 BC § 1105.1; 2014 BC § 1105.1; and 2022 BC § 1105.1.*

III. No signage identifies an accessible public entrance to Electric Burrito (to the extent Defendants claim they provide an accessible public entrance).
*Defendants fail to display signage (marked with the International Symbol of Accessibility or otherwise) that identifies an accessible entrance. See 1991 ADA §§ 4.1.2(7)(c); 4.1.3(8)(d); and 4.1.6(1)(h); 2010 ADA § 216.6; 1968 BC § 27- 292.18; 2008 BC § 1110; 2014 BC §§ 1101.3.4 and 1110; and 2022 BC §§ 1101.3.4 and 1111.*

IV. There is no directional signage at the inaccessible public entrance to Electric Burrito that indicates the location of an accessible entrance (to the extent Defendants claim they provide an accessible entrance).
*Defendants do not provide and display signage at the inaccessible public entrance (marked with the International Symbol of Accessibility or otherwise) that indicates the location of an accessible entrance. See 1991 ADA §§ 4.1.6(1)(h) and 4.1.3(8)(d); and 2010 ADA Standards § 216.6.*
*Defendants fail to provide directional signage at necessary locations. See 1968 BC § 27-292.18(b).*
*Defendants fail to provide directional signage by the inaccessible entrance indicating the route to the nearest accessible entrance. See 2008 BC § 1110.2; 2014 BC §§ 1101.3.3; and 1110.2; and 2022 BC §§ 1101.3.3; and 1111.2.*

V. Maneuvering clearances for pulling open Electric Burrito's public entrance door is not provided due to steps.
*Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 60 inches perpendicular to the door for 18 inches parallel to the door beyond the latch is required for a forward approach to the pull side of a door, or 54 inches perpendicular to the door for 24 inches parallel to the door beyond the latch is required for a latch approach to the pull side of a door. See 1991 ADA § 4.13.6; 2010 ADA § 404.2.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

VI. There are steps at the exterior side of Electric Burrito's public entrance door which have a change in level greater than ½ inch high.
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a ramp, elevator, or platform lift. See 1991 ADA § 4.3.8; and 1968 Ref Std § 4.3.8.*
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. See 2010 ADA § 303.4; 2008 Ref Std § 303.3; and 2014/2022 Ref Std § 303.4.*

VII. The stairs to Electric Burrito's public entrance lacking handrails on both sides.

*Defendants fail to provide handrails on both sides of the stairs. See 1991 ADA § 4.9.4; 2010 ADA § 505.2; 1968 Ref Std § 4.9.4; 2008 Ref. Std § 505.2; and 2014/2022 Ref. Std § 505.2.*

99. Architectural barriers at Electric Burrito (which Plaintiff has been made aware of prior to filing his Complaint) include, but are not limited to, the following violations of the ADA Standards and the NYC Standards:

<u>*Drinking & Dining*</u>

I. There are no accessible dining surfaces (seating) inside Electric Burrito.
*Where dining surfaces for the consumption of food or drink are provided, at least 10 percent of the total number of seating and standing spaces, but not less than one, of each type of dining surfaces shall be accessible and be distributed throughout the facility and located on a level accessed by an accessible route. See 2022 BC § 1108.2.9.1.*
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*
*Defendants fail to provide that at least 10% of the dining surfaces provided to customers are accessible. See 2022 BC § 1109.11.*

II. There is no accessible counter dining surface (seating) at Electric Burrito.
*Where seating is provided at dining or drinking counters, at least one 60inch (1524 mm) long portion of the counter shall be provided with two accessible seating spaces. Such accessible seating space shall not be located within 40 inches (1016 mm) of either end of the counter, so as to provide individuals with disabilities with the same level of service and experience as that provided to others. See 2022 BC §1108.2.9.*
*Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 ADA §§ 5.1 and 5.2.*
*Defendants fail to provide that where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 ADA §§ 226.1 and 902.*
*Defendants fail to provide that at least 5 percent of the seating and standing spaces are accessible. See 1968 BC § 27-292.10(a)(3); 2008 1109.11; and 2014 BC § 1109.10.*
*Where dining surfaces for the consumption of food or drink are provided, at least 10 percent of the total number of seating and standing spaces, but not less than one, of each type of dining surfaces shall be accessible and be distributed throughout the facility and located on a level accessed by an accessible route. See 2022 BC § 1108.2.9.1.*
*Defendants fail to provide that at least 10% of the dining surfaces provided to customers are accessible. See 2022 BC § 1109.11.*

III. The window dining counter at Electric Burrito exceeds 34 inches in height.
*The tops of accessible dining surfaces shall be 28 inches minimum and 34 inches*

*maximum above the finish floor. See 1991 ADA § 4.32.4; 2010 ADA § 902.3; 1968 Ref Std § 4.30.4; 2008 Ref Std § § 902.3; and 2014/2022 Ref Std § 902.4.*

IV. All of the dining counters at Electric Burrito have a wall or window obstructing knee and toe clearances required for a forward approach to the seating.
*Defendants fail to provide a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § § 902.2; and 2014/2022 Ref Std § 902.2.*

V. Accessible tables and dining surfaces are not identified by the International Symbol of Accessibility (to the extent Defendants claim they provide accessible tables).
*Defendants fail to provide that accessible seating shall be identified by the International Symbol of Accessibility. See 2008 BC § 1110.1(9); 2014 BC § 1110.1(11); and 2022 BC § 1111.1(12).*

*Restroom Facilities & Elements*

VI. The toilet room at Electric Burrito is not accessible.
*Defendants fail to provide accessible toilet facilities. See 1991 ADA § 4.1.3(11); 2010 ADA § 213.1; 1968 BC § 27-292.12; 2008 BC § 1109.2; 2014 BC § 1109.2; and 2022 BC § 1109.2.*

VII. The toilet room lacks maneuvering clearances on both sides of the toilet room doors.
*At interior doors, Defendants fail to provide level maneuvering clearances on both sides of the door1991 ADA § 4.13.6; 2010 ADA § 404.2.4;1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

VIII. The door lock of the toilet room has hardware that requires pinching and twisting of the wrist.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 ADA § 4.13.9; 2010 ADA § 404.2.7; 1968 Ref Std § 4.13.9; 2008 Ref Std § 404.2.6; and 2014/2022 Ref Std § 404.2.6.*

IX. The water closet in the toilet rooms lacks compliant grab bars.
*Defendants fail to provide an accessible water closet with a side wall grab bar that is 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. See 1991 ADA § 4.16.4; 2010 ADA § 604.5.1; 1968 Ref Std § 4.16.4; 2008 Ref Std § 604.5.1; and 2014/2022 Ref Std § 604.5.1.*
*Defendants fail to provide an accessible water closet with a vertical side wall grab bar. See 2008 Ref Std § 604.5.1; and 2014/2022 Ref Std § 604.5.1.*
*Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 ADA § 4.16.4; 2010 ADA § 604.5.2; 1968 Ref Std § 4.16.4; 2008 Ref Std § 604.5.2; and 2014/2022 Ref*

*Std § 604.5.2.*

X. The water closet centerline in the toilet rooms is located outside of 16" to 18" from the side wall.
*Defendants fail to provide an accessible standard water closet positioned with the centerline of the water closet 16 inches minimum to 18 inches maximum from the side wall or partition. See 1991 ADA § 4.16.2; 2010 ADA § 604.2; 1968 Ref Std § 4.16.2; 2008 Ref Std § 604.2; and 2014/2022 Ref Std § 604.2.*

XI. The coat hooks within the toilet room are not within an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 ADA § 4.2.6; 2010 ADA § 308.3.1, 1968 Ref Std § 4.2.6; 2008 Ref Std § 308.3.1; and 2014/2022 Ref Std § 308.3.1.*

XII. The toilet room lacks an accessible lavatory.
*Defendants fail to provide at least one accessible lavatory within accessible toilet and bathing facilities. See 1991 ADA § 4.23.6; 2010 ADA § 213.3.4; 1968 BC § 27-292.12; 2008 BC § 1109.2; 2014 BC § 1109.2; and 2022 BC § 1109.2.*

XIII. The lavatory in the toilet room lacks protected hot water and drain pipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 ADA §§ 4.19.4 and 4.24.6; 2010 ADA § 606.5; 1968 Ref Std § 4.19.4; 2008 Ref Std § 606.6; and 2014/2022 Ref Std § 606.6.*

XIV. The electric hand dryer within the toilet room is not within an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 ADA § 4.2.6; 2010 ADA § 308.3.1, 1968 Ref Std § 4.2.6; 2008 Ref Std § 308.3.1; and 2014/2022 Ref Std § 308.3.1.*

XV. The operable parts of the electric hand dryer are not within reach range due to the lavatory counter and the height of the electric hand dryer.
*Defendants fail to provide that lavatories have operable parts within reach range. See 1991 ADA §§ 4.19 and 4.24; 2010 ADA § 309.3, 1968 Ref Std § 4.19.2; 2008 Ref Std § 606 § and 2014/2022 Ref Std § 606.*

<u>Interior Accessible Route/Egress</u>

XVI. The public entrance for Electric Burrito is also the exit and not accessible as described above.
*Defendants fail to provide accessible means of egress in the number required by the code. See 2010 ADA § 207.1; 1991 ADA § 4.1.3(9); 1968 BC § 27-292.1; 2008 BC § 1007.1; 2014 BC § 1007.1; and 2022 BC § 1009.1*

100. A full inspection of Electric Burrito will reveal the existence of other barriers to access.

101. To properly remedy Defendants' unlawful discrimination and avoid piecemeal litigation, Plaintiff requires a full inspection of Electric Burrito to catalogue the other architectural barriers at Electric Burrito and have Defendants remediate them.

102. Plaintiff gives notice that he intends to amend his Complaint to include any violations of the Accessibility Standards or Human Rights Laws that are discovered during an inspection of Electric Burrito.

**FIRST CAUSE OF ACTION**
**(DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT)**

103. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

104. Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102; 28 C.F.R. § 36.105(a) and (b).

105. As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair for mobility and has restricted use of his arms and hands.

106. "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(b).

107. The ADA imposes joint and several liability on each of the owner of a building in which a place of public accommodation is located, the lessor of space in a building to a place of

public accommodation, the lessee of space in a building for a place of public accommodation, and the owner or operator of the place of public accommodation. See 28 C.F.R. § 36.201(b).

108. Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and operator of Electric Burrito, a place of public accommodation is liable to Plaintiff. See Id.

109. None of the Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity. 28 C.F.R. 36.201(b).

110. Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to access Electric Burrito on the basis of disability.

111. Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

112. By failing to comply with the law in effect for decades, Defendants have articulated to Plaintiff, as a disabled person, that he is neither desired nor welcome as a patron of Electric Burrito.

113. Defendants performed design and construction work to build out Electric Burrito but failed to perform the work so that their place of public accommodation, Electric Burrito, complies with the 1991 ADA Standards or the 2010 ADA Standards.

114. Because Electric Burrito does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to his mobility disability. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

115. Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff based on disability. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

116. Defendants fail to provide an integrated and equal setting for the disabled at Electric Burrito in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

117. In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Defendants failed to make Electric Burrito compliant with the ADA Standards to the maximum extent feasible when they performed work that constituted alterations to Electric Burrito.

118. Defendants failed to provide "readily accessible and usable" paths of travel to the altered primary function areas of Electric Burrito in violation of 28 C.F.R. § 36.403.

119. Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access at Electric Burrito in violation of 28 C.F.R. § 36.304.

120. It has been and remains readily achievable for Defendants to make Electric Burrito accessible by complying with the ADA Standards.

121. By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

122. Alternatively, To the extent Defendants allege that the removal of any of the barriers to access was, and remains, not readily achievable, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal. 28 C.F.R. § 36.305.

123. Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 et. seq., and 28 C.F.R § 36.101 et. seq.

124. Defendants continue to discriminate against Plaintiff in violation of the ADA by maintaining a place of public accommodation that is not compliant with the ADA Standards, and therefore not accessible.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF**
**THE NEW YORK HUMAN RIGHTS LAW**

125. Plaintiff realleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

126. Plaintiff suffers from various medical conditions that separately and together prevent him from exercising the life activities of both walking and body motion range.

127. Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 292(21).

128. In 2019, the New York State legislature enacted legislation which amended the construction provision of the State HRL, Executive Law § 300, to require that the protections and provisions be liberally construed. NY Session Law 2019, ch 160.

129. The 2019 amendment requires the State HRL's provisions and the protections it provides to be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". Executive Law § 300.

130. By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005, Local Law 85 of 2005, the New York State legislature confirmed the legislative intent to abolish parallel construction between the State HRL and related Federal anti-discrimination laws.

131. Defendants have and continue to subject Plaintiff to disparate treatment by denying him equal opportunity to use their place of public accommodation all because he is disabled.

132. Defendants discriminated against Plaintiff in violation of State HRL, Executive Law § 296(2), by creating or maintaining an inaccessible place of public accommodation.

133. Each of the Defendants have aided and abetted others in committing disability discrimination.

134. Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of State HRL, Executive Law § 296(2)(c)(iii).

135. In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of State HRL, Executive Law § 296(2)(c)(v).

136. It would be readily achievable (as defined by the State HRL) to make Defendants' place of public accommodation fully accessible.

137. It would not impose an undue hardship or an undue burden on Defendants to make their place of public accommodation fully accessible.

138. As a direct and proximate result of Defendants' unlawful discrimination in violation of State HRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

139. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF**
**THE NEW YORK CITY HUMAN RIGHTS LAW**

140. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

141. Plaintiff suffers from medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

142. Due to his impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

**Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.**

143. The City HRL guarantees the right of all individuals, regardless of disability, to equal opportunity (*i.e.*, equivalent access) to places of public accommodation.

144. "Equivalent access, in the words of the City HRL, is the opportunity to have "full and equal enjoyment, on equal terms and conditions" to the accommodations, advantages, services, facilities, and privileges of a place of public accommodation. N.Y.C. Admin. Code § 8-107(4).

145. Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they created and maintain a place of public accommodation, Electric Burrito, which is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

146. Defendants are also liable for the conduct of their employees and agents which resulted in the creation and maintenance of a place of public accommodation which is not accessible. N.Y.C. Admin. Code § 8-107(13).

147. Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly "refuse, withhold from, or deny" Plaintiff equal opportunity to enjoy the "accommodations, advantages, services, facilities or privileges" of Electric Burrito due to his disability.

148. Defendants' policies and procedures inclusive of their policies of refusing to expend funds to design, create, and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

149. Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Electric Burrito constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a); See also N.Y.C. Admin. Code § 19-152 and § 7-210.

150. Defendants' failure to provide an accessible place of public accommodation and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

151. Defendants discriminate against Plaintiff as they subject him to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

152. Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of Electric Burrito because of his disability.

153. Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent" result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *See* N.Y.C Admin. Code § 8-107(17); and *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001).

154. Defendants' failure to comply with the NYC Building Code as well as their failure to expend funds to upgrade and alter Electric Burrito to remove obsolete features such as

stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

155. Because the result of Defendants' policies and practices is a place of public accommodation that is not accessible to people with mobility disabilities, Plaintiff has demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

156. Defendants also discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations necessary for persons with mobility disabilities that use wheelchairs. N.Y.C. Admin. Code § 8-107(15)(a).

157. Defendants' failure to make reasonable accommodations include their failure to remove the architectural barriers to access detailed herein so that individuals with mobility disabilities that use wheelchairs, including Plaintiff, have equal opportunity to enjoy what Defendants offer at Electric Burrito.

158. Defendants have known, or should have known, that members of the public, which includes current and prospective patrons of Electric Burrito such as Plaintiff, have mobility disabilities that require the use of wheelchairs to ambulate.

159. Defendants have known, or should have known, reasonable accommodations are necessary for persons with mobility disabilities that use wheelchairs to have the equal opportunity to enjoy what Defendants offer at their place of public accommodation, Electric Burrito.

160. To the extent Defendants were not obligated to have altered or maintained Electric Burrito so that the architectural barriers identified in this Complaint do not exist it would

not cause undue hardship in the conduct of their business to remove the architectural barriers detailed in this Complaint as a reasonable accommodation for persons with mobility disabilities that use wheelchairs.

161. Defendants cannot demonstrate that it would cause undue hardship in the conduct of their respective businesses to remove the architectural barriers to access detailed herein as a reasonable accommodation for persons with mobility disabilities that use wheelchairs.

162. Defendants' failure to provide reasonable accommodations for persons with disability, inclusive of their failure to remove the barriers to access identified in herein, and Defendants' consequent denial of equal opportunity to Plaintiff, constitutes an ongoing continuous pattern and practice of disability discrimination in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

**Section 8-130: The City HRL's Construction and Maximally Protective Role.**

163. To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85 (2005) of City of New York § 7) and to ensure that it the law is "maximally protective of civil rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in 2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

164. The 2005 and 2016 amendments confirm that the City HRL is not coextensive with federal or state civil rights laws "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of this title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by Local Law 85 § 7 and Local Law 35 § 2.

165. The 2005 and 2016 amendments instead provide that the City HRL's protections are cumulative to the protections provided by federal or state civil rights laws, as the City HRL must "be interpreted liberally and independently of similar federal and state provisions" to accomplish the City HRL's uniquely broad and remedial purposes "as one of the most expansive and comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on Civ Rights at 6 and 8, March 8, 2016, Local Law Bill Jacket, Local Law No. 35 (2016) of City of NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations imposed on entities subject to the City HRL by "similarly worded provisions of federal and state civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

166. The 2016 Amendments to the City HRL additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)] shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

167. Due to the above-referenced amendments, the City HRL provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and the State HRL (Title 15 of the Executive Law) provide to persons in the same protected classes.

168. Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law.

169. Defendants' liability under the City HRL for their conduct alleged herein must be determined separately and independently from their liability under the ADA or State HRL, to the extent that Defendants escape liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

170. Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

171. Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

172. Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

173. The City HRL's stricter standards also apply in situations where the ADA and the State HRL have provisions that are comparably worded to the City HRL's provisions. N.Y.C. Admin. Code § 8-130.

174. Defendants must therefore provide an accessible place of public accommodation, regardless of their obligation to provide accessibility under similarly worded provisions of the ADA or the State HRL.

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

175. In violation of the City HRL, Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C. Admin. Code § 8-107(6).

176. Each of the Defendants have aided and abetted others in committing disability discrimination.

177. Defendants' conduct constitutes an ongoing and continuous violation of the City HRL.

178. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.

179. Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

180. As a direct and proximate result of Defendants' unlawful discrimination in violation of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including humiliation, stress, and embarrassment.

181. Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

182. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

183. Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to the City HRL N.Y.C. Admin. Code § 8-502.

184. By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies they should have used to provide an accessible space to themselves.

185. By refusing to make their place of public accommodation accessible, Defendants have unlawfully benefited from their discriminatory conduct by collecting revenue from a non-compliant space.

186. Defendants continue to take for themselves funds they are required to spend to remediate Electric Burrito so that it is accessible.

187. The amounts Defendants diverted to themselves, and the unlawful revenues they gained must be disgorged.

188. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK CIVIL RIGHTS LAW)**

189. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

190. The CRL guarantees the rights of all persons in New York to "full and equal accommodations, advantages, facilities and privileges of any places of public accommodation[]…subject only to the conditions and limitations established by law and applicable alike to all persons." N.Y. Civ. Rights Law § 40.

191. The CRL therefore provides that public accommodations (i.e., covered entities), cannot "directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges" of their place of public accommodation. *Id*.

192. The CRL also guarantees all persons in New York "equal protection of the laws of [New York and the City of New York] and specifically protects individual with disabilities from "any discrimination in his or her civil rights … by any other person or by any firm, corporation or institution". Id. at § 40-c.

193. Those that discriminate against an individual with a disability are subject to a monetary penalty of $100 - $500 per offence, recoverable by the individual that suffered the discrimination pursuant to the CRL. *Id*. at § 40-d.

194. Defendants discriminated against Plaintiff pursuant to the State HRL and the City HRL.

195. Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by CRL § 40-d for each discriminatory violation under the State HRL and the City HRL.

196. As required by CRL § 40-d, notice of this action has been served upon the New York Attorney General.

## INJUNCTIVE RELIEF

197. Plaintiff will continue to experience unlawful discrimination from Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief which Orders Defendants to alter and modify their place of public accommodation to comply with the Accessibility Standards and the Human Rights Laws, is necessary.

198. Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff as an individual with a disability that uses a wheelchair in accordance with the above-mentioned laws.

199. Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA and the City HRL.

## JURY DEMAND

200. Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that Defendants have violated the ADA inclusive of its implementing regulations and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B. Issue a permanent injunction ordering Defendants to remediate Electric Burrito so that it is accessible to wheelchair users as required by the ADA, State HRL, and City HRL, which includes remediating all violations of the 2010 Standard and the NYC Standards at Electric Burrito;

C. Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and that Defendants will not repeat their unlawful practices, acts and omissions;

D. Award Plaintiff compensatory damages from Defendants' violations of the City HRL;

E. Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the City HRL;

F. Award Plaintiff the monetary penalties for each act of discrimination in violation of the State HRL and City HRL, per defendant, pursuant to New York State Civil Rights Law § 40-d;

G. Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA and City HRL; and

H. For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: July 9, 2026

Respectfully submitted,

**HANSKI PARTNERS LLC**
By:/s/ Adam S. Hanski
Adam S. Hanski, Esq.
Attorneys for Plaintiff
4 International Dr, Ste 110
Rye Brook, NY 10573
Telephone: (212) 248-7400
Email: ash@disabilityrightsny.com